*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
MONAHAN, DEERWESTER, and McCOY
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Kenneth L. HUNTER**
Corporal (E-4), U.S. Marine Corps
*Appellant*

**No. 202100162**

_____

Decided: 31 August 2022

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Melanie J. Mann

Sentence adjudged 21 April 2021 by a special court-martial convened at Marine Corps Base Hawaii, Kaneohe Bay, Hawaii, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 12 months, and a bad-conduct discharge.

For Appellant:
*Captain Kimberly D. Hinson, JAGC, USN*

For Appellee:
*LT Ebenezer K. Gyasi, JAGC, USN*
*LT R. Blake Royall, JAGC, USN*
*LT Gregory A. Rustico, JAGC, USN*

_____

**This opinion does not serve as binding precedent under
NMCCA Rule of Appellate Procedure 30.2(a).**

_____

PER CURIAM:

Appellant was convicted, consistent with his pleas, of two specifications of larceny of non-military property and one specification of accessing a government computer to obtain protected information for an unauthorized purpose in violation of Articles 121 and 123, Uniform Code of Military Justice [UCMJ], for using his position as a Government Travel Card Agency Program Coordinator [APC] for Third Battalion, Third Marine Regiment, Hawaii, to wrongfully take money from Citibank that had been overpaid to travelers.[1]

Appellant initially asserted a single assignment of error [AOE]: whether the record of trial is incorrect because it includes two charge sheets, only one of which was specifically addressed by Appellant's court-martial. We subsequently specified the following issue: whether the military judge abused her discretion by accepting Appellant's guilty plea to larceny without clarifying whether the Appellant formed the requisite mens rea during the time-period alleged in the specifications, which formed the basis for Appellant's second AOE. We find merit in both Appellant's assignment of error and the specified issue and take action in our decretal paragraph.

## I. BACKGROUND

Between July 2019 and October 2019, Appellant was deployed to Okinawa, Japan, and performed duties as an APC for the Government Travel Charge Cards [GTCC] program with Citibank. As an APC, Appellant had access through a government computer to determine when Citibank provided fellow Marines with overpayments to their respective GTCCs. Apprised of this information, Appellant would then contact Citibank using the other Marines' personal identifiable information [PII], also accessed through a government computer, to gain access to the Marines' accounts and instruct Citibank to refund the overages to his personal accounts.

Appellant's record of trial contains two charge sheets. The first, older, charge sheet was the initial charge sheet and was referred on 1 April 2021. The

---

[1] 10 U.S.C. §§ 921, 923.

second charge sheet was referred on 19 April 2021 and was the one upon which Appellant entered his guilty pleas in accordance with his plea agreement.

## II. DISCUSSION

### A. Record Correction

Whether a record of trial is accurate and complete is a question we review de novo.[2] An appellant is entitled to have the official record accurately reflect what happened in the proceedings.[3] Appellant submits that the inclusion of the first charge sheet, referred on 1 April 2021, is an error and requests that the court take corrective action. The Government agrees with Appellant that "a charge sheet from a previous court-martial was incorrectly attached to the [r]ecord of [t]rial, alleges no prejudice, and requests the Court order corrective action."[4] We concur that the inclusion of the earlier charge sheet was an error, which did not affect Appellant's substantive rights, because no prejudice was alleged or is apparent.[5] However, to ensure that his record of trial is correct and accurately reflects the proceedings, we take action in our decretal paragraph.

### B. Acceptance of Guilty Plea to Larceny Specifications

#### 1. Standard of review and the law

We review questions of law arising from guilty pleas de novo.[6] Prior to accepting a guilty plea, the military judge must ensure the plea is supported by an adequate factual basis.[7] The military judge must elicit sufficient facts to

---

[2] *United States v. Crumpley*, 49 M.J. 538 (N-M. Ct. Crim. App. 1998).

[3] *Crumpley*, 49 M.J. at 539.

[4] Gov't Brief at 2.

[5] *Crumpley*, 49 M.J. at 539.

[6] *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).

[7] *United States v. Price*, 76 M.J. 136, 138 (C.A.A.F. 2017).

satisfy every element of the offense in question, and the military judge's decision to accept a plea of guilty is reviewed for an abuse of discretion.[8]

A military judge abuses her discretion if a ruling is based on an erroneous view of the law,[9] or if the military judge "fails to obtain from the accused an adequate factual basis to support the plea" – however, the factual basis is an area in which the military judge is afforded significant deference.[10] A reviewing appellate court may only reject a guilty plea if there is a substantial basis in law or fact to question the plea.[11]

An accused may express his willingness to admit guilt to an offense, but that alone is not sufficient to establish the providence of a plea of guilty as it only reflects his subjective belief that his conduct as alleged was criminal. Assuming that the language of the specification sufficiently states an offense, the accused must also reveal factual circumstances that objectively establish his guilt within the "four corners" of the specification.[12] A conviction cannot be upheld even if an accused pleads guilty to a charge when there are not sufficient facts to reasonably support the charge.[13]

Article 121, UCMJ, larceny of non-military property, contains four elements: (1) that the accused wrongfully took, obtained, or withheld certain property from the possession of the owner or of any other person; (2) that the property belonged to a certain person; (3) that the property was of a certain value, or some value; and (4) that the taking, obtaining, or withholding by the accused was with the intent to permanently deprive or defraud another person of the use and benefit of the property or permanently to appropriate the property for the use of the accused or for any person other than the owner.[14]

---

[8] *Inabinette*, 66 M.J. at 321.

[9] *United States v. Simpson*, 77 M.J. 279, 282 (C.A.A.F. 2018) (citation omitted).

[10] *Simpson*, 77 M.J. at 282 (quoting *United States v. Nance*, 67 M.J. 362, 365 (C.A.A.F. 2009).

[11] *Inabinette*, 66 M.J. at 322 (citing *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)).

[12] *United States v. Chambers*, 12 M.J. 443, 444 (C.M.A. 1992).

[13] *United State v. Norvell*, 26 M.J. 477, 480 (C.M.A. 1998) (footnote omitted).

[14] Article 121, UCMJ.

### 2. Appellant's guilty pleas to larceny were not provident

The military judge instructed, consistent with the stipulation of fact between the parties, that to meet the fourth element of larceny, Appellant must have had the intent to permanently deprive Citibank of the use and benefit of its property for the use of Appellant or someone other than Citibank. Appellant stated in the stipulation of fact that his obtaining of property from Citibank was with the intent to permanently deprive Citibank of the use and benefit of the property. However, during the plea colloquy with the military judge, Appellant made statements that called into question whether he intended to permanently deprive Citibank of its money. The military judged failed to clarify whether Appellant intended to permanently deprive Citibank of property during the time period alleged in the specifications.[15] This confusion during the providence inquiry was compounded by the military judge repeatedly using the term "wrongful appropriation" when she ostensibly meant "larceny" during her inquiry with the Appellant as it related to Appellant's guilt to Specifications 1 and 2 of Charge II.[16]

We must resolve the question of whether the matters elicited during the plea inquiry objectively furnished a factual predicate for Appellant's plea to larceny of non-government property. Recognizing that a military judge is entitled to much deference when it comes to accepting guilty pleas, she must nevertheless elicit facts from which she can determine the factual basis for the guilty plea, and "mere conclusions of law recited by an accused are insufficient to provide a factual basis for a guilty plea."[17] We must determine whether Appellant's guilty plea to larceny was provident. Even in a guilty plea, a matter that calls into question the required *mens rea* requires further exploration by the military judge.[18]

Notwithstanding the stipulation of fact, the record indicates a substantial conflict between the plea and Appellant's statements during the providence

---

[15] *See United States v. Tobias*, No. ARMY 20200169, 2021 CCA LEXIS 18, at *9 (A. Ct. Crim. App. Jan. 19, 2021) (finding a substantial basis to question the appellant's guilty plea where a larceny specification alleged a timeframe encompassing the initial taking, but did not capture the time period when the appellant formed the intent to permanently deprive).

[16] R. at 40, 49.

[17] *United States v. Outhier*, 45 M.J. 326, 331 (C.A.A.F. 1996) (citation omitted).

[18] *United States v. Thomas*, 39 M.J. 1078, 1079 (C.G.C.M.R. 1994).

inquiry related to whether Appellant intended to permanently deprive Citibank of its property during the time-period alleged in Specifications 1 and 2 of Charge II. The military judge failed to elicit whether, during the time-period alleged in Specifications 1 and 2 of Charge II, the Appellant intended to permanently deprive Citibank of its property, which is an essential element of a larceny specification.[19]

During her inquiry into Specification 1 of Charge II the military judge engaged in the following colloquy with Appellant:

> MJ: And so you intended to wrongfully appropriate this property?
>
> ACC: Yes, ma'am.
>
> …
>
> MJ: Did you intend to return it?
>
> ACC: Down the line I did. I know I wasn't – I already know what I was facing at that point. I couldn't do anything at that point, after all the money was gone.
>
> MJ: So you intended to deprive Citibank of the use and benefit of the property in this case, the money?
>
> ACC: Yes, ma'am.
>
> MJ: Once again, do you agree then that taken together your actions satisfy the elements and definitions of the offenses as I've stated them for you earlier and you are, in fact, guilty of wrongful appropriation by obtaining?[20]

During her inquiry into specification 2 of charge II, the military judge inquired as follows:

> MJ: So you intended to wrongfully appropriate this property?
>
> ACC: Yes, ma'am.
>
> MJ: And do you agree that you – let me just ask you. Did you intend to return the money?
>
> ACC: Yes, ma'am.
>
> MJ: You did return – you did intend on returning it.

---

[19] *United States v. Bilbo*, 9 M.J. 800, 802 (N.M. C.M.R. 1980) (holding appellant must have had the specific intent, at the time and places alleged, to permanently deprive creditors of the use and benefit of their funds to affirm a conviction for larceny).

[20] R. at 40.

ACC:  Yes, ma'am, but never did anyway.  Once I realized I was already in some sort of trouble – there was no time to even do it or no strategy way to even send money back to who they belonged to.

MJ:  So at some point, you just intended that you were not going to return it?

ACC:  Yes, ma'am.

MJ:  So you agree and admit that you deprived Citibank of the use and benefit of the property, in this case, the money?

ACC:  Yes, ma'am.

MJ: And once again, you agree that, taken together, your actions satisfy the elements and definitions of this offense as I have stated them for you earlier, and that you are in fact guilty of the offense of wrongful appropriation, that is obtaining by false pretense for both Specifications 1 and 2?[21]

Appellant set up a possible defense to larceny when he provided responses related to his intent to permanently deprive Citibank of its money during the time and places alleged in the specifications that were inconsistent with his pleas. Moreover, the military judge did not effectively address this conflict during the providence inquiry.  In other words, Appellant stated a possible defense during the colloquy with the military judge that was inconsistent with his plea.[22]  The intent to repay or replace stolen property is only a defense to larceny if there exists a substantial ability to actually do so.[23]

Put differently, if a substantial ability to replace stolen property exists, then an accused who "takes money …with the intent to return an equivalent amount of money" has not committed the offense of larceny, but may have committed the offense of wrongful appropriation.[24] The record lacks inquiry into whether Appellant had a substantial ability to restore the money to Citibank. He admitted to wrongfully obtaining money of some value, (Specification 1, Charge II) and some amount less than $1,000 (Specification 2, Charge II) that was the property of Citibank.  While it is clear from the record that when asked

---

[21] R. at 49.

[22] *See United States v. Bullman*, 56 M.J. 377, 381 (C.A.A.F. 2002).

[23] *United States v. Boddie*, 49 M.J. 310 (C.A.A.F. 1998).

[24] *Manual for Courts-Martial, United States [MCM]*, Part IV, P 64(c)(1)(f)(iii)(B) (2019 ed.)

about what happened to the money he wrongfully obtained from Citibank, Appellant advised that he "went splurging with it all" and "all of the money was gone." However, that inquiry was made related to what happened to the money Appellant wrongfully obtained, not whether he had a substantial ability to repay the amounts wrongfully obtained. At the time of his guilty plea, Appellant was employed full time as an active-duty Corporal in the United States Marine Corps and was receiving a salary. As there was no inquiry whether Appellant was unable to restore Citibank during the timeframe alleged in the specifications, there was no finding as such by the military judge. Therefore, the military judge accepted Appellant's guilty pleas without resolving a potentially valid legal defense to larceny, the intent to repay, that presented itself based on Appellant's responses during the providence inquiry.

Accordingly, the findings of guilty to larceny with regard to Specifications 1 and 2 of Charge II must be set aside and dismissed. However, from the record we are convinced that Appellant was provident to the lesser included offense of wrongful appropriation with regard to Specifications 1 and 2 of Charge II because he formed the specific intent to, and did, temporarily deprive Citibank of the use and benefit of its property.[25] "Any reviewing authority with the power to approve or affirm a finding of guilty may approve or affirm, instead, so much of the finding as includes a lesser included offense."[26] As it relates to Specifications 1 and 2 of Charge II we, therefore, find Appellant's plea provident only to the lesser included offense of wrongful appropriation of non-military property.

### C. Sentence Reassessment

One of the significant changes under the Military Justice Act of 2016 [MJA 2016] was to implement "segmented" sentencing. Under MJA 2016, the military judge adjudges segmented sentences for confinement and fines, and in the case of confinement for more than one offense, determines whether the periods of confinement run concurrently or consecutively.[27]

Having set aside and dismissed Appellant's conviction for the greater offense charged in Specifications 1 and 2 of Charge II and affirming only the lesser included offense of wrongful appropriation of non-military property, we must determine whether we can reassess the sentence or must remand to the trial court. We do so by analyzing (1) whether there have been dramatic

---

[25] *MCM*, pt. IV, para. 64(a)(2).

[26] Article 59(b), UCMJ.

[27] *See* Rule for Courts-Martial 1002(d)(2).

changes in the penalty landscape or exposure; (2) whether sentencing was by members or military judge alone; (3) whether the nature of the remaining offenses captures the gravamen of the criminal conduct within the original offenses, and whether or not significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses; and (4) whether the remaining offenses are of the type with which appellate judges should have experience and familiarity to determine what sentence would have been imposed at trial.[28]

Appellant remains convicted of two specifications of wrongful appropriation of non-military property and one specification of accessing a government computer to obtain protected information for an unauthorized purpose.[29] His overall exposure remains the jurisdictional maximum that may be awarded at a special court-martial. The military judge conducted the sentencing, and the remaining offenses and the record capture the gravamen of Appellant's criminal misconduct in accessing the personally identifiable information of fellow Marines in order to wrongfully appropriate property of Citibank. Finally, the offenses that remain are offenses that we have sufficient experience and familiarity with to reliably determine what sentence would have been imposed at trial. Accordingly, we conclude that we can reassess the sentence.

The record is clear that while deployed, and on divers occasions, Appellant unlawfully accessed personally identifiable information of fellow Marines to unlawfully obtain property belonging to Citibank. Appellant was sentenced by a military judge. The terms of the plea agreement dictated the unitary portion of the sentence, requiring the military judge to adjudge a bad-conduct discharge and reduction to E-1, with which the military judge complied. Reviewing this sentence with the "individualized consideration" of the particular accused based on the "nature and seriousness of the offense and the character of the offender," we find a unitary punishment consisting of reduction to E-1, and a bad conduct discharge to be appropriate.[30]

MJA 2016's segmented sentencing construct requires reassessment of confinement. Three months is the maximum period of confinement authorized for a violation of wrongful appropriation.[31] Based on the entirety of the record, we hold that a sentence of three months confinement for Specification 1 of Charge

---

[28] *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013).

[29] Articles 121, 123, UCMJ.

[30] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (internal quotation omitted).

[31] *MCM*, pt. IV, para. 64(d)(2)(a).

II, three months confinement for Specification 2 of Charge II, and twelve months of confinement for the sole specification of Charge IV is a just and appropriate segmented sentence. We also hold that it is also appropriate for all sentences of confinement to run concurrently.

## III. CONCLUSION

The record of trial does not accurately reflect the disposition of Appellant's court-martial. Although we find no prejudice, Appellant is entitled to have court-martial records that correctly reflect the content of his proceeding.[32] In accordance with R.C.M. 1111(c)(2), we modify the record of trial and **ORDER** that the erroneously included charge sheet, referred on April 1, 2021, be removed from the record.[33]

Considering all of the foregoing, and after careful consideration of the record, only so much of the findings of guilty to Specifications 1 and 2 of Charge II as finds Appellant guilty of the lesser included offense of wrongful appropriation of non-military property are **AFFIRMED**. The greater offense of larceny charged in both Specifications 1 and 2 of Charge II are **DISMISSED**. The remaining finding of guilty to the sole specification of Charge IV is **AFFIRMED**. As the Entry of Judgment does not accurately reflect the disposition of the charges, in accordance with Rule for Courts-Martial 1111(c)(2), we modify the Entry of Judgment and direct that it be included in the record.[34]

FOR THE COURT:

S. TAYLOR JOHNSTON
Interim Clerk of Court

---

[32] *Crumpley*, 49 M.J. at 539.

[33] To promote judicial economy the Court notes that an uncontested scrivener's error or error in the compilation of a record may in the future be more quickly resolved through a motion to correct the record, pursuant to Rule 6(c) of the United States Navy-Marine Corps Court of Criminal Appeals Rules of Appellate Procedure.

[34] Articles 59 & 66, UCMJ.

# United States Navy–Marine Corps Court of Criminal Appeals

| | |
|---|---|
| **UNITED STATES** | NMCCA NO. 202100162 |
| **v.** | **ENTRY OF JUDGMENT** |
| **Kenneth L. HUNTER** **Corporal (E-4)** **U.S. Marine Corps** *Accused* | *As Modified on Appeal* **31 August 2022** |

On 21 April 2021, the Accused was tried at Marine Corps Base Hawaii, Kaneohe Bay, Hawaii, by a special court-martial, consisting of a military judge sitting alone. Military Judge Melanie J. Mann, presided.

## FINDINGS

The following are the Accused's pleas and the Court's findings to all offenses the convening authority referred to trial:

**Charge I:** **Violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880.**

*Plea:* Not Guilty
*Finding:* Dismissed

**Specification:** **Attempts – other than murder and voluntary manslaughter between on or about 30 July 2019 and on or about 4 August 2019.**

*Plea:* Not Guilty
*Finding:* Dismissed

**Charge II:** **Violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921.**

*Plea:* Guilty
*Finding:* Guilty

**Specification 1:** **Larceny of non-military property of a value of $1,000 or less between on or about 24 July 2019 and on or about 17 October 2019.**

*Plea:* Guilty

*Finding:* Not Guilty, but Guilty of the lesser included offense of wrongful appropriation [The greater offense of larceny was dismissed by the United States Navy-Marine Corps Court of Criminal Appeals.]

**Specification 2:** **Larceny of non-military property of a value of $1,000 or less between on or about 24 July 2019 and on or about 17 October 2019.**

*Plea:* Guilty

*Finding:* Not Guilty, but Guilty of the lesser included offense of wrongful appropriation [The greater offense of larceny was dismissed by the United States Navy-Marine Corps Court of Criminal Appeals.]

**Charge III:** **Violation of Article 121a, Uniform Code of Military Justice, 10 U.S.C. § 921a.**

*Plea:* Not Guilty

*Finding:* Dismissed

**Specification:** **Knowingly using a credit or debit card without authorization to obtain property of a value of $1,000 or less on or about 26 July 2019.**

*Plea:* Not Guilty

*Finding:* Dismissed

**Charge IV:** **Violation of Article 123, Uniform Code of Military Justice, 10 U.S.C. § 923.**

*Plea:* Guilty

*Finding:* Guilty

**Specification:** **Accessing a government computer to obtain protected information for an unauthorized purpose between on or about 24 July 2019 and on or about 17 October 2019.**

*Plea:* Guilty

*Finding:* Guilty

**Charge V:** **Violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934.**

> *Plea:* Not Guilty
>
> *Finding:* Dismissed

**Specification 1:** **Violation of federal law, Wire Fraud between on or about 24 July 2019 and on or about 17 October 209.**

> *Plea:* Not Guilty
>
> *Finding:* Dismissed

**Specification 2:** **Violation of federal law, Wire Fraud between on or about 24 July 2019 and 17 October 2019.**

> *Plea:* Not Guilty
>
> *Finding:* Dismissed

## SENTENCE

On 21 April 2021, a military judge sentenced the Accused to the following (as modified, if at all, during any post-trial action):

**Reduction to pay grade E-1.**

> *For Specification 1 of Charge II:*
> confinement for 3 months.
>
> *For Specification 2 of Charge II:*
> confinement for 3 months.
>
> *For the Specification of Charge IV:*
> confinement for 12 months.

The terms of confinement will run concurrently.

**Confinement for a total of 12 months.**

**A bad-conduct discharge.**

FOR THE COURT:

S. TAYLOR JOHNSTON
Interim Clerk of Court